### ALDRICH et al. v. WARD et al.

(Supreme Court, Appellate Division, Fourth Department. January 7, 1902.)

MORTGAGE—ASSIGNMENT IN TRUST—DELIVERY—EVIDENCE—MERGER.

Decedent sold land, taking back a mortgage, which on March 27, 1871, he assigned to his daughter in trust to secure for her and her children an annual income. The first year's interest was paid to decedent, whether for himself or his daughter did not appear. The second year's interest was paid to the daughter. Thereafter she commenced foreclosure proceedings; the complaint, verified by her, and notice of lis pendens, reciting that decedent, on March 27, 1871, assigned the mortgage to her. Decedent himself brought the assignment to the daughter's attorney to enable him to prepare the complaint. The action was later dismissed, the mortgagor deeding the property to the daughter. The assignment was found among decedent's papers after his death, and delivered to the daughter, who immediately had it recorded. Six years later she conveyed the premises to plaintiff as free from incumbrances. There was no direct evidence that the assignment was ever delivered. *Held*, that a finding that the assignment was never delivered to the daughter, but that she took absolute title to the mortgage independent thereof, and that, therefore, the mortgage had merged in the subsequent conveyance to her, so as to bar the interest of the children in the mortgage, was against the evidence.

Appeal from trial term, Chautauqua county.

Suit by Edwin Aldrich and others against Seth Aldrich and others, in which Frank W. Ward was impleaded. From a decree for plaintiffs, Ward appeals. Reversed.

The action was commenced on the 10th day of December, 1899, to procure a certain mortgage which is an apparent lien upon premises owned by the plaintiffs, together with an assignment thereof, to be canceled and discharged of record, upon the ground that it had merged in a conveyance of the premises made by the mortgagors to one Mary A. Ward, alleged to be owner of the mortgage in her own right, which relief was, in substance, awarded by the judgment appealed from.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and HISCOCK, JJ.

George W. Town, for appellant Frank W. Ward.
Elton D. Warner, for respondents Edwin Aldrich and others.
B. F. Skinner, for respondent Seth Aldrich.

McLENNAN, J.  On the 23d day of December, 1870, and for many years prior thereto, one Samuel A. Patterson, now deceased, was the owner of the premises described in the complaint. On that day, by warranty deed, he conveyed the same to one Charles L. Chesbro, also deceased, for the expressed consideration of $10,000, the whole of which the grantee obligated himself to pay by the execution of his bond, conditioned for the payment of the principal sum after the expiration of 19 years from the date of the bond, and not before, with interest annually. The bond was secured by a mortgage on the premises executed by the grantee and his wife, bearing even date with the deed, contained the same conditions as the bond, and was duly recorded on the 16th day of January, 1871. On the 27th day of March, 1871, Patterson executed and acknowledged an assignment of the bond and mortgage, together with another bond and mortgage for $7,712, not involved in this action, to his daughter Mary A. Ward, deceased, in trust, however, to receive the interest thereon for 19 years from the 1st day of February, 1871, the interest thereafter to be payable one half to the said Mary A. Ward during her natural life, and the other half, share and share alike, to her children, if any, then living; the principal after her death to be paid to her surviving children, if any, and, if none, then to her brothers or their descendants. The respondents claim, and the trial court found, that such assignment was never delivered to Mary A. Ward by Patterson, or accepted by her, and was therefore without force or affect, but that Mary A. Ward became the absolute owner of the bond and mortgage entirely independent of such assignment, and that merger took place when she became the owner of the fee, as she afterwards did. Such finding presents the chief question to be determined upon this appeal.

The interest on the mortgage which became due at the expiration of the first year after its execution was paid to Patterson, but whether for his own or his daughter's use does not appear. The next year's interest was paid to Mrs. Ward. The interest

falling due at the end of the third year was not paid, although demanded by Mrs. Ward, and on the 7th day of April, 1873, an action was commenced in the supreme court by her, through her attorneys, Messrs Sherman & Hull, of Forestville, N. Y., to foreclose the mortgage. In the complaint in that action, which was duly verified on that day by Mary A. Ward, it was, among other things, alleged: "And the said Samuel A. Patterson, on the 27th day of March, 1871, by an instrument in writing under his hand and seal, duly sold and assigned the said bond and mortgage to the said plaintiff, Mary A. Ward, who is the holder and owner thereof." In the lis pendens, which was prepared by the attorneys on the same day, it was, among other things, stated: "And said mortgage was by the said Samuel A. Patterson, by an instrument under his hand and seal, in writing, on the 27th day of March, 1871, duly sold and assigned to the said plaintiff." The bond and mortgage were delivered by Mrs. Ward to her attorneys for the purpose of having the same foreclosed, or by her husband, Wallace Ward, who was acting for her. The complaint in the foreclosure action was prepared by Mr. Hull, and is in his handwriting, except the date of the alleged assignment, which was unknown to him. Patterson then brought the assignment to the attorneys' office, and from it the date was ascertained and inserted in the complaint, with the knowledge of Patterson. Mary A. Ward then made oath to the truth of the allegations therein contained, and the attorneys, upon that information, prepared the lis pendens. After service of the summons and complaint upon Chesbro, he served through his attorneys, Messrs. Murray & Patterson, a notice of retainer. Thereafter, and on May 20, 1873, the action was discontinued, the plaintiff paying the costs; and Chesbro and his wife executed a deed of conveyance of the premises to Mary A. Ward, and at the same time delivered a horse of the value of about $200 to her or to Patterson, and the bond executed by Chesbro was surrendered to him, and thereby, as understood by all the parties, personal liability on the part of Chesbro upon such bond and mortgage ceased and terminated, and Mary A. Ward immediately entered into possession of the premises. Samuel A. Patterson died on the 12th day of October, 1883, and the evidence of the witness James G. Patterson, who was a brother of Mary A. Ward, is to the effect that after the death of his father he found the assignment in question among his father's old and worthless papers; that he nevertheless delivered the same to his sister, Mary A. Ward, who immediately caused the same to be recorded under date of November 30, 1883. Mary A. Ward lived until after the expiration of the period of 19 years mentioned in the bond and mortgage and in the assignment, and died on the 11th day of February, 1898, her husband having died previously, leaving as her heirs at law her children, the appellant Frank W. Ward, who is of full age, Leila Ward, an infant, and certain grandchildren, children of her deceased son Perry P. Ward, all of whom are made defendants. Mary A. Ward, on the 21st day of November, 1889, six years after she procured the assignment in question to be re-

corded, and when, according to the records in the county clerk's office, the premises were incumbered by the Chesbro mortgage which she owned in trust, conveyed the same by warranty deed to Edwin Aldrich, the plaintiff in this action, for the expressed consideration of $6,000, $3,000 of which he paid in cash, and the balance was secured by a mortgage on the premises given by him to his grantor. January 23, 1894, Edwin Aldrich conveyed a portion of the premises to the plaintiff Charles Bedgar for the consideration of $1,000, which was paid. On May 4, 1894, Edwin Aldrich conveyed another portion of the premises to the plaintiff George Aldrich for the consideration of $2,200, which was also paid. The plaintiffs, as owners of the fee of the premises described in the complaint upon which the $10,000 mortgage executed by Chesbro to Samuel A. Patterson is an apparent lien, seek in this action to have the same and the assignment thereof discharged of record and canceled, which was done by the judgment appealed from.

The relief granted was proper if Mary A. Ward was the absolute owner, in her own right, of the mortgage, on the 23d day of May, 1873, the time when she became the owner of the fee of the premises by the deed executed by Chesbro; for in such case the mortgage would have merged in the conveyance. It is equally clear that if Mary A. Ward held said mortgage by virtue of the assignment executed and acknowledged by her father, on the 27th day of March, 1871, and therefore owned it only as trustee for the benefit of her children, of whom the appellant, Frank W. Ward, is one, such merger did not take place, at least as to the interest of such children, and therefore that as to them the relief granted was improper.

There is no dispute as to the law of the case. It is only necessary to determine whether or not the finding that Mary A. Ward did not take the mortgage by virtue of the assignment, but became the absolute owner of it by some means entirely independent of the assignment, is supported by the evidence, or is against the weight of evidence. It is conceded by all parties that Samuel A. Patterson, the mortgagee parted with all his interest in the mortgage, and transferred it to his daughter, Mary A. Ward, either individually or as trustee, soon after its execution, at least before the action to foreclose the same was commenced, and before Mary A. Ward took title to the premises as the result of the discontinuance of that action. The rights of the parties became fixed at the time of such transfer, and therefore it is of no consequence what either of them did after that time or upon the conveyance of the property to Mary A. Ward, except as it may throw light upon the question whether or not she held the mortgage individually or as trustee. Neither is it important what Mary A. Ward subsequently did in respect to the property. It is quite possible, and the evidence indicates, that when she came to sell the property she claimed to be the absolute owner, free and clear of all incumbrances, and in effect asserted that her children had no lien upon or interest therein by virtue of the mortgage. Her action, however, in that regard, her declarations respecting the property or relating to the mortgage, could in no manner change the rights of

the parties, and were only competent, if at all, for the purpose of throwing light upon the transaction between herself and her father, to the end that its true character may be ascertained. The fact, if it be a fact, that the horse which Chesbro parted with when he executed the conveyance of the premises, as a condition of being relieved from personal obligation upon the bond and mortgage, was delivered to and received by Patterson, or the fact that Mary A. Ward executed a warranty deed of the premises to the plaintiff and took a mortgage back for one-half of the purchase price, could not in any manner affect the rights of the parties.

What, then, is the evidence bearing upon the character of Mary A. Ward's ownership of the mortgage? The conditions for the payment of the principal debt secured by the bond and mortgage are peculiar and unusual, in that no part of the principal sum could be paid until after the expiration of 19 years. The interest, however, was payable annually. Within three months after the mortgage was executed the mortgagee, by the terms of the assignment in question, made provision for the support of his daughter and her children, if any, based upon that unusual condition. It would seem that the inference is permissible that the condition as to payment was inserted in the bond and mortgage to enable the mortgagee to make the provision for his daughter and her children which he did by the assignment. The assignment as drawn included, as we have seen, another bond and mortgage for $7,712, made by the husband of Mary A. Ward, thus securing to her and to her children the income of more than $17,000, secured by mortgages upon real estate, which was to continue for a period of 19 years. After the execution of the assignment, it is true, the mortgagee collected the interest falling due at the end of the first year, but whether he did so for himself or for his daughter does not appear and is not important, in view of the fact that the assignment was not made until after the year was well advanced.. The interest which became due at the end of the second year was collected by and paid to Mary A. Ward in accordance with the terms of the assignment. She sought to collect the interest which fell due at the end of the third year, and, being unsuccessful, she, through her attorneys, instituted foreclosure proceedings. Concededly, during this time Patterson had ceased to be the owner of the mortgage. He had transferred his interest in it to his daughter, individually or as trustee, and during that time certainly nothing occurred or was done by either party to indicate that she owned or claimed to own the mortgage absolutely rather than by virtue of the assignment. The action of foreclosure was commenced only three years after the assignment in question had been executed and acknowledged, when the parties were living, when all the facts were fresh in their minds, and when there could have been no purpose or opportunity to change them or for one party to take advantage of the other. At that time, when she verified the complaint in the foreclosure action, the daughter, with the knowledge of the father, made oath that she was the owner of the mortgage by virtue of the assignment in question, he, the father, furnishing the data for such allegation; and, relying upon the information thus furnished to them by the father, the attorneys,

reputable men in their profession, certified in the lis pendens which was signed by them that such was the fact. Nothing occurred from the time the complaint was prepared, in 1873, until after the death of Samuel A. Patterson, or until Mary A. Ward conveyed the premises, in 1889, 16 years after the date of the assignment, to indicate that the fact was not as stated by her in the complaint, which she had sworn to with the knowledge of her father. Certain statements made by her during that period are relied upon by respondents as proving a contrary state of facts, but no act is pointed out, done by either of the parties, which in any manner contradicts the fact as sworn to by the daughter with the knowledge of the father, and assented to by him, to wit, that Mary A. Ward owned the mortgage by virtue of the assignment. The son of Samuel A. Patterson testified that the assignment was found after his father's death, among his old and worthless papers. That fact cannot be regarded as very important, in view of the relation which the parties sustained to each other and what had occurred between them. Mary A. Ward had sworn that she was the owner of the mortgage by virtue of the assignment. It was produced by the father in order that she might make such oath. Apparently both fully understood the facts, and therefore it is not surprising that the instrument itself was left in the custody of the father, and not guarded with the care which instruments of that character usually are. It is true there is no direct evidence that the assignment was ever delivered to, actually handed to, Mary A. Ward by her father, nor is there any evidence that it was not. If at any time after its execution it had been delivered to her, the fact that it afterwards remained in the custody of the father is of no importance; but, while there is no direct evidence of delivery, the acts of the parties, the sworn statement of one with the knowledge of the other, and all attendant circumstances, establish the fact of delivery beyond all reasonable doubt.

There is no direct evidence that the bond and mortgage were ever handed over or delivered to Mary A. Ward by her father. Her absolute ownership is found solely because of the fact that she had possession of them. The conclusion is irresistible that she had such possession under and by virtue of the assignment which her father had executed to her, the validity of which both had solemnly recognized when the complaint in the foreclosure suit was verified. The assignment in question was evidently prepared with care; was formally executed under seal; its validity was recognized by both parties to the instrument, one of whom, with the assent and knowledge of the other, made oath that it had the force and effect which its terms imported, and produced it, that such oath might be made. No act of the parties during the lifetime of the assignor, or of the assignee, for a period of 16 years, and until she assumed to sell the premises free from the lien of the mortgage, indicated in the slightest degree that such assignment did not, as it purported to, transfer the mortgage in question to Mary A. Ward in trust for her children. After the death of her father it is uncontradicted that Mary A. Ward procured the assignment to be recorded, thus recognizing its validity, and such act, being in hostility to her interest, is entitled to be con-

strued adversely to her. It cannot be said that she would have caused a paper to be recorded which she understood was worthless, —one that had never had any force or effect, had never been delivered. There is no basis for the suggestion that it was the act of an ignorant person, or that it was done without knowledge of its purpose or effect. The husband, who had charge of her affairs, as appears by the evidence, was a business man, engaged in banking, and presumably knew the proper disposition to be made of such a paper, and there is no evidence that Mary A. Ward was not equally well informed as to such matters.

Under all the circumstances, we think the evidence contained in the record in this case, given after all the parties to the transaction are dead, which it is claimed by respondents tends to support the finding of the learned trial court that the assignment in question was not delivered to Mary A. Ward, and for that reason had no binding force and effect, ought not to prevail as against the uncontradicted facts which tend to establish the contrary proposition. No equities exist in favor of the plaintiffs as against the appellant. When they took their respective conveyances, the mortgage and assignment were on record, and they are conclusively proven to have purchased with knowledge of the fact.

The conclusion is reached that the finding that the assignment in question was not delivered to Mary A. Ward by her father, Samuel A. Patterson, in his lifetime, and that Mary A. Ward took absolute title to the mortgage in question independent of such assignment, is against the weight of evidence, and for that reason the judgment appealed from should be reversed, and a new trial granted, with costs to the appellant to abide event.

Judgment reversed, and new trial ordered, with costs to the appellant to abide event. All concur.